# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

BRYAN JAMES BROWN,

        Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,

        Defendant.

No.  C18-3071-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.  INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable
Kelly K.E. Mahoney, Chief United States Magistrate Judge.  *See* Doc. No. 29.  Judge
Mahoney recommends that I affirm the decision by the Commissioner of Social Security
(the Commissioner) denying Bryan James Brown's application for disability insurance
benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et seq.
Brown has filed timely objections (Doc. No. 30).  The Commissioner has not filed a
response.

## II.  APPLICABLE STANDARDS

### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial
evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.
2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive  . . .").  "Substantial
evidence is less than a preponderance, but enough that a reasonable mind might accept
as adequate to support a conclusion."  *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir.

2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude

further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


### III.    THE R&R

On June 23, 2014, Brown suffered a workplace accident involving an exploding pressure cooker filled with boiling broth that left a third of his body severely burned. Doc. No. 29 at 1 (citing AR 35, 61-62, 2537-40). He was hospitalized for 20 days in the burn unit before being discharged home. *Id.* at 2 (citing AR 64, 458-531, 2018, 2032, 2537). Brown began experiencing mental health symptoms during this time and was prescribed medication. *Id.* (citing AR 2862-63). He also sought mental health treatment following his discharge from the hospital. *Id.*

Brown attended follow-up appointments related to his burn injuries through June 2015. *Id.* (citing AR 2021-63, 2099-2102, 2245). He saw his primary care physician for hypertension and other ailments, including pain. *Id.* at 3 (citing AR 2665-67, 2687). In December 2015, Brown drove one-and-a-half hours for treatment of his pain at the Siouxland Pain Clinic. *Id.* (citing 2245-47). He complained of pain in his legs that worsened with standing as a result of his burns and was prescribed slow-release oxycodone and tramadol for breakthrough pain. *Id.* He visited the pain clinic every month or two and continued receiving those medications until 2017, when he began receiving testosterone injections. *Id.* (citing AR 78-79, 2528-33, 2252-53, 2565-81, 2627-40, 2642, 2843).

After his discharge from the hospital, Brown received regular mental health treatment from Heidi Lohff, LISW, who specializes in post-traumatic stress disorder (PTSD). Brown saw Lohff approximately twice a month, except for periods when his son was sick or he was asked to see a different provider at the request of workers' compensation. *Id.* (citing AR 2836-49, 2864-70, 2932-40). He also saw nurse practitioners every one to three months for management of his mental health medications.

*Id.* (citing AR 2555-60, 2850-59, 2864-70, 2941-43). Additionally, Brown attended numerous consultative examinations in connection with his workers' compensation claim. *Id.* at 4 (citing AR 2077-89, 2411-16, 2536-54, 2587-2625, 2643-57, 2934). He also attended a psychological consultative examination at the request of the Social Security Administration in connection with his application for DIB. *Id.* (citing AR 2509-12).

Brown applied for DIB in December 2015, alleging disability since June 23, 2014 (the date of the accident). *Id.* His application was denied on initial review and reconsideration. *Id.* (citing AR 94-124). An administrative hearing was held by video on February 28, 2018, during which Brown and vocational expert Vanessa May (VE May) testified. *Id.* (citing AR 33, 50, 54-55).

On June 5, 2018, the ALJ issued a written opinion finding Brown was not disabled since June 25, 2014. *Id.* (citing AR 33-47). The ALJ concluded Brown had severe impairments of "status-post multiple burns on his upper and lower extremities," depression, anxiety and PTSD. *Id.* (citing AR 35). The ALJ determined Brown had the following residual functional capacity (RFC):

> light work . . . with the ability to stand/walk for only 2/8 hours; should avoid pushing/pulling with the bilateral lower extremities; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds; should avoid concentrated exposure to extreme cold and heat as well as wetness; should be allowed to alternate positions every 30 minutes but would not need to be off task during those position changes; should avoid exposure to workplace hazards; and is limited to simple, routine tasks[.]

*Id.* at 5 (citing AR 36). The ALJ further found that Brown could not return to his past work, but that a significant number of other jobs existed in the national economy that Brown could perform, such as sorter, charge account clerk, or telephone quotation clerk. *Id.* (citing AR 46-47). The ALJ therefore concluded Brown was not disabled. This became the final decision of the Commissioner when the Appeals Council denied Brown's request for review on November 14, 2018. *Id.* (citing AR 1-4; 20 C.F.R. § 404.981).

Brown argues the ALJ erred by relying on VE May's testimony rather than a VE who gave her opinion in connection with Brown's workers' compensation case. Brown also argues the ALJ erred in discounting his subjective complaints based on his activities of daily living and that the ALJ's RFC determination should have included the need for three absences a month, extra breaks during the workday and being off task 10 to 15 percent of the work day.

With regard to the ALJ's reliance on VE May's testimony, Judge Mahoney noted that Karen Stricklett (VE Stricklett), who evaluated Brown's job prospects in connection with his workers' compensation claim, was considering only jobs "in the Northwest Iowa nonmetropolitan area" or the "Fonda, IA area" – the local area where Brown lived at the time. *Id.* at 6-7 (citing AR 2896-97). Under the Social Security Administration regulations, the relevant inquiry is whether a significant number of jobs exist in the national economy. *Id.* The regulations specifically provide "[i]t does not matter whether . . . [w]ork exists in the immediate area in which [the claimant] live[s]." *Id.* at 7 (quoting 20 C.F.R. § 404.1566(a)(1)). Judge Mahoney concluded that the differences between the workers' compensation and Social Security standards was a good reason for giving little weight to VE Stricklett's opinion.

Judge Mahoney noted that VE Stricklett's opinion was also entitled to little weight because it is not clear whether she was evaluating Brown's job prospects based on the same RFC used by the ALJ. *Id.* VE Stricklett opined that Brown could perform "sedentary to light" work "that would not require standing/walking for greater than 30 minutes at a time and would not require prolonged exposure to sunlight or extreme temperature exposures." *Id.* (quoting AR 36, 2897). She also found that Brown had memory issues and concentration difficulties, quoting a portion of a psychiatrist's opinion that described Brown would be likely to quickly decompensate if a work environment made sudden demands on him. *Id.* (citing AR 2622, 2892, 2897). The ALJ included an RFC limitation of "simple, routine tasks," but it is not clear whether this limitation accounts for the memory and concentration issues that VE Stricklett identified. *Id.* at 7-

6

8 (citing AR 36). Judge Mahoney concluded that the ALJ did not err in relying on VE May's testimony over VE Stricklett's.

Next, Judge Mahoney addressed Brown's argument that VE May's testimony conflicts with the O*NET, an online database of occupational information published by the Department of Labor. *Id.* at 8 (citing Doc. No. 25 at 17). Brown argues that according to O*NET, the jobs identified by VE May exceed Brown's skill and experience. Judge Mahoney explained that while inconsistency between VE testimony and the Dictionary of Occupational Titles (DOT) may require remand, there does not appear to be the same requirement regarding inconsistencies between VE testimony and the O*NET. *Id.* Judge Mahoney concluded VE May's testimony constitutes substantial evidence that a significant number of jobs exist in the national economy that Brown can perform. *Id.* at 9.

With regard to Brown's subjective complaints, he argues the ALJ misconstrued the extent of his activities of daily living. Judge Mahoney noted that the ALJ described daily activities from a function report Brown completed for the Social Security Administration in March 2016. *Id.* at 10 (AR 248-54). Brown observes that some difficulties described in that same function report were not included in the ALJ's analysis. For example, his report stated that depression made it harder for him to focus on television such that he would need to lie down and listen to music instead. Judge Mahoney explained that numerous treatment notes reflect Brown reporting being able to watch television and that substantial evidence supports the ALJ's determination that Brown was able to maintain the focus and concentration necessary to watch television on a daily basis. *Id.* (citing AR 2095, 2151, 2546, 2856). Brown also argues that the ALJ did not account for his testimony that he needs help putting on his socks and shoes. Judge Mahoney found the ALJ adequately acknowledged this limitation by stating Brown reported "little to no" problems with personal care. *Id.* (citing AR 68, 250).

Brown also challenges the ALJ's finding that Brown helped care for his disabled son, who has a condition that causes his brain stem to deteriorate, leaving him bedridden

and unable to communicate or feed himself. *Id.* (citing AR 64-65, 2537). Brown contends that most of his son's care was provided by his wife and a home health nurse who has worked 8:00 a.m. to 4:00 p.m. on weekdays since his son was two years old. *Id.* Judge Mahoney found that substantial evidence supported the ALJ's determination that Brown nonetheless provided care to his son, including changing his diapers and feeding him. *Id.* at 11. She cited Brown's March 2016 function report and specific treatment records indicating Brown was taking care of his ill wife in addition to his son in 2015 and 2016. *Id.* Judge Mahoney concluded the ALJ did not err in failing to credit Brown's testimony that the home health nurse and Brown's wife (who is on disability) provide most of the care for Brown's son. *Id.* at 11-12 (citing AR 60, 75).

Next, Judge Mahoney addressed Brown's argument that the ALJ failed to acknowledge other limits to his daily activities, including that he is no longer able to play the guitar, cannot drive due to drowsiness he experiences from his medications, cannot use the stove, oven or grill since his accident and does not participate in many social activities. Judge Mahoney noted that Brown reported limited social activities prior to the accident due to his son's illness. She also noted that while Brown testified he did not do housework or yard work, he reported doing laundry in March and May 2016 and "straightening up the home" in May 2016. *Id.* at 12 (citing AR 249, 2510). Judge Mahoney reasoned that while the ALJ did not discuss every activity that Brown was unable to do, this did not affect the ALJ's findings about the things Brown *can* do. *Id.* She distinguished his situation from the one in *Tilley v. Astrue*, 580 F.3d 675 (8th Cir. 2009), in which the claimant's activities (used to discount the treating physician's opinion) were given inappropriate weight because the record showed that while claimant could do certain activities, they exacerbated her fibromyalgia pain and required her to see her doctor. *Id.* Here, the credible activities Brown cannot do are encompassed by the RFC limitations. The activities he can do are consistent with the RFC and other evidence in the record and do not reflect the need for greater limitations. Judge Mahoney concluded

substantial evidence supports the ALJ's reliance on Brown's activities of daily living (in addition to the treatment records) to discount his subjective complaints. *Id.* at 12-13.

With regard to the need for additional limitations related to absences, extra breaks and being off task due to medical appointments and symptoms, Judge Mahoney first examined Brown's treatment. She noted that during the relevant time period, Brown attended therapy sessions lasting 45 minutes to an hour about twice a month; short 15- to 30-minute psychological medication management appointments an average of once every two months; and medication management appointments at the pain clinic once every one to two months. *Id.* at 13. It would take Brown 30 minutes to drive to his mental health appointments, an hour and a half to drive to the pain clinic and 30 minutes to drive to his primary care provider. *Id.* Because he attends medical appointments two to four times a month at some distance from his residence, he argues he will miss work two to four times a month. *Id.* at 14.

Judge Mahoney noted that numerous district courts in the Eighth Circuit have rejected similar arguments. *Id.* at 14 (citing cases). Courts have generally reasoned that "simply because a claimant requires regular healthcare appointments does not necessarily mean he cannot work on the days he has appointments, such as by arranging appointments around the work schedule or during breaks, nor even that the claimant would need to miss an entire work day for an appointment." *Id.* (quoting *Morin v. Colvin*, No. 4:14-CV-00769-NKL, 2015 WL 4928461, at *9 (W.D. Mo. Aug. 18, 2015)). Judge Mahoney noted that the record does not indicate Brown would need to miss entire days of work to attend his appointments. *Id.* at 14-15. His regular appointments last less than an hour and could be accomplished during a lunch break or around a work schedule. *Id.* at 15. Moreover, she noted that the amount of time it takes Brown to get to his appointments from his rural town is not a relevant consideration under the regulations, which require the ALJ to determine whether there is work Brown could perform in the national economy. *Id.*

With regard to whether the ALJ should have included additional limitations reflecting the need for unscheduled breaks or consistently being off task more than ten percent of the time, Brown cites his poor sleep, spells of tearfulness, panic attacks and flashbacks. *Id.* (citing Doc. No. 25 at 12-13). Judge Mahoney acknowledged that the record supports symptoms of poor sleep and becoming tearful. *Id.* at 15-16 (citing treatment notes). With regard to flashbacks and panic attacks, she noted the treatment records support that Brown primarily suffered these symptoms at night in the form of nightmares and not during the day, unless driving by the town where the accident occurred. *Id.* at 16 (citing AR 531, 2209, 2124, 2211, 2547, 2856, 2864-70, 2939). Judge Mahoney concluded substantial evidence did not support a finding that Brown suffered panic attacks and flashbacks with such frequency that he would routinely be off task or needing extra breaks.

With regard to Brown's tearfulness, Judge Mahoney observed that he often linked his depression to feeling unable to work and contribute to his family and that multiple consultative examiners opined that his mental health would improve if he returned to the workforce. *Id.* at 17 (citing AR 2871, 2878-80). With regard to whether Brown's symptoms justified extra breaks or demonstrated a limitation of being routinely off task, Judge Mahoney noted that in formulating Brown's mental RFC, the ALJ relied on his mental-status examinations, which showed he was pleasant and cooperative with little to no deficits in memory, attention, concentration and thought processes. *Id.* (citing AR 45). She concluded that substantial evidence supported the ALJ's determination that despite Brown's mental-health symptoms, he could focus and concentrate to the extent necessary to perform simple, routine tasks. She recommends that I affirm the ALJ's decision.

## IV. DISCUSSION

Brown makes the following objections to the R&R:

- The ALJ erred in relying on VE May's testimony rather than VE Stricklett's opinion especially because the evidence shows the jobs identified by VE May are outside Brown's skill and experience

- Brown's regular appointments would require him to be absent or leave work early at least twice each month and the evidence does not support that he could receive treatment during lunch or other breaks

- Brown would be off task or need extra breaks due to panic attacks, flashbacks, depression and tearfulness.

Doc. No. 30. I will discuss each in turn.


### A. VE Testimony

Brown argues Judge Mahoney read VE Stricklett's opinion too narrowly in that it was not limited to the Northwest Iowa nonmetropolitan, or Fonda, Iowa, areas. *See* Doc. No. 30 at 1-2. He notes that VE Stricklett concluded Brown had one hundred percent loss of earning capacity as a result of the injuries he sustained in his workplace accident. *Id.* He explains VE Stricklett's conclusions were not based on geography, but on the medical opinions and restrictions identified by Drs. Reilly, Patra and Bansal. *Id.* at 2. Specifically, Brown contends her conclusions were based on his physical and mental restrictions and limitations, a review of available jobs in the sedentary to light work category and Brown's skill level and experience. *Id.* He argues VE Stricklett's opinion should have been given greater weight and the ALJ's failure to consider this evidence is irrational and unsupported by substantial evidence in the record as a whole. Brown also challenges the ALJ's reliance on VE May's testimony, arguing that the jobs she identified exceed his skill and experience.

VE Stricklett's 16-page industrial disability assessment was completed at the request of Brown's workers' compensation attorney (who is also his attorney in this case).

AR 2885-2900. In her report, VE Stricklett discussed opinions from various doctors who were asked to evaluate Brown's functional capacity in association with his workers' compensation case. Brown (and VE Stricklett) rely heavily on an opinion from Dr. Patra, who was asked to complete an independent psychiatric evaluation at the request of Brown's attorney. Dr. Patra stated:

> The important thing to pay attention to while looking at whether Mr. Brown can work in a competitive environment is that Mr. Brown has concentration difficulties coupled with memory issues. These combined with lack of energy and motivation, pervasive sense of fear/negativity, nightmares, sleep difficulties, increased irritability, low frustration tolerance, and panic attacks make it likely that Mr. Brown is functioning at a suboptimal level. The concern in such an individual is that with their emotional and physical reserves already being so low, they are apt to decompensate quickly when the work environment makes sudden demands on them.

AR 2889. In making her assessment, VE Stricklett provided two scenarios – one based on the opinions of Drs. Reilly, Patra and Bansal and one based on the opinions of Drs. Gutnik and Martin. In both scenarios, VE Stricklett considered Brown's ability to procure employment and earn wages within the Northwest Iowa nonmetropolitan or Fonda, Iowa, areas. *See* AR 2896-99.

An ALJ may consider an examination or opinion that was part of a claimant's workers' compensation claim. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). However, statements by doctors related to a workers' compensation claim are not binding on the Social Security Administration. *See Loeffler v. Massanari*, 23 F. App'x 605, 606 (8th Cir. 2001) (citing 20 C.F.R. § 404.1504). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

Here, the ALJ considered the same medical opinions as VE Stricklett, in addition to the medical opinions of the state agency medical and psychological consultants (who are familiar with Social Security regulations and standards) as well as other medical and non-medical evidence. The ALJ addressed evidence associated with Brown's workers' compensation case by stating the following:

> The undersigned notes that worker's compensation benefits were also at issue during the relevant time frame and many of the opinions provided by medical professionals were related to worker's compensation issues and not whether the claimant was disabled under Social Security Rules and Regulations. (See Exhibits 9F, 27F, 30F, 32F, 33F, 39F).[1] Notably, an opinion by any person or entity about the claimant based on worker's compensation rules and regulations is vastly different than the Social Security Administration's decision about whether the claimant is disabled. The Social Security Administration must make a disability determination based on social security law. Therefore, a determination made by any other person or entity about whether the claimant is disabled is not binding on the Social Security Administration. (20 CFR 404.1504). As such, the medical opinions rendered in conjunction with the claimant's claim for worker's compensation benefits have been considered, but unless otherwise specified are given limited weight for the reasons previously set forth.

AR 43-44. The ALJ's decision demonstrates that he considered VE Stricklett's opinion but did not find it binding on his decision.

With regard to Brown's argument that VE Stricklett's assessment was not limited to a specific geographical area, he is incorrect. While Brown references "labor market research" that was conducted by VE Stricklett, he leaves out the fact that this research was conducted "in the Fonda, IA area." AR 2897. The relevant part of the assessment Brown relies on states:

> To demonstrate the effect of the opinions expressed by Dr. Reilly and Dr. Patra and the restrictions recommended by Dr. Bansal upon Mr. Brown's access to jobs in the open labor market, I utilized the Occupational Access System (OASYS) published by Vertek, Inc. Version 3.90.05, 2017. After developing Mr. Brown's vocational profile and eliminating occupations that

---

[1] Exhibit 39F is VE Stricklett's industrial disability assessment.

would not be compatible with these restrictions, his loss of access to jobs in the Northwest Iowa nonmetropolitan area was determined to be approximately 99%.

. . . .

Even though the OASYS program indicated that Mr. Brown had a loss of access to jobs of 99%, labor market research was conducted in the Fonda, IA area in order to determine if there are positions in the open labor market that Mr. Brown would qualify for with consideration given to the opinions expressed by Dr. Reilly and Dr. Patra and the restrictions recommended by Dr. Bansal. The results of the labor market research that was conducted confirmed that there would be no occupational alternatives available to him in the open labor market at the current time.

AR 2896-97.

I agree with the reasons stated by Judge Mahoney that the ALJ appropriately considered VE Stricklett's assessment and that it was not entitled to greater weight given that Social Security standards differ from workers' compensation standards. If the claimant cannot perform his or her past relevant work at Step Four, the Social Security regulations require the ALJ to determine at Step Five whether the claimant can perform other work that "exist[s] in significant numbers in the national economy (either in the region where [the claimant] lives or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). *See also* 20 C.F.R. § 404.1566 ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions in the country. It does not matter whether – (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work."). VE Stricklett's assessment does not address that question. Therefore, her determination is of limited value, especially because the ALJ obtained testimony from VE May that directly addresses that issue. Moreover, as Judge Mahoney pointed out, it is unclear the precise limitations VE Stricklett considered in making her assessment. I find no error with regard to the ALJ's consideration of VE Stricklett's assessment and do not find that her assessment

undermines the ALJ's decision. Brown's objection related to VE Stricklett's assessment is overruled.

With regard to VE May's testimony, Brown argues that the jobs she identified are outside his skill and experience. Doc. No. 30 at 3-4. VE May testified that a person with the limitations described in the ALJ's RFC and hypothetical question could perform work as a sorter, charge account clerk and telephone quotation clerk. AR 88. She confirmed her testimony was consistent with the DOT. *Id.* Brown cites O*NET for the proposition that these positions require computer and keyboarding skills as well as knowledge of office software that Brown does not have. *Id.* (citing Doc. No. 25 at 10-11, 17 and AR 2893-94). He contends there are no jobs compatible with his skills, experience and abilities and that VE May's testimony cannot serve as substantial evidence in support of the ALJ's decision.

In his principal brief, Brown notes that the charge account clerk description in the DOT states, in part, that a charge account clerk

> reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit . . . may verify entries and correct error on charge accounts . . . using adding machine.

Doc. No. 25 at 10 (citing DOT Code No. 205.367-014). Brown argues this description is outdated and cites O*NET Online Summary Report for New Account Clerk 43 – 4141.00; www.onetonline.org/link/summary/43-4141.00 as a more reliable source for what kind of skills and experience this job entails. He notes that all of the jobs cited by VE May appear to be outdated as those jobs are typically done electronically rather than through the mail as suggested in the DOT. *Id.* (citing DOT Code No. 205.367-014 for charge account clerk). Judge Mahoney noted that Brown does not explain what limitations in the O*NET are incompatible with his RFC but generally argues that the jobs identified by VE May all require greater skill and experience requirements than he has. Doc. No. 29 at 8. Because there was no inconsistency between the DOT and the

15

VE's testimony, Judge Mahoney found no issue with this aspect of the ALJ's opinion. *Id.* at 8-9.

The ALJ asked VE May to "assume an individual of the Claimant's age, education, and work experience with the following limitations . . ." AR 87. The ALJ described the limitations that were ultimately adopted in the RFC and asked if such an individual could perform any of Brown's past work. *Id.* The VE found that the individual could not. With regard to other work available in the national economy, VE May testified that she was looking at "sedentary unskilled work" and identified the jobs of sorter (DOT number 521.687-086), charge account clerk (DOT number 205.367-014) and telephone quotation clerk (DOT number 237.367-046). AR 88. She also confirmed her testimony was consistent with the DOT. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). To the extent Brown argues he does not have the skills and experience to perform these jobs, I disagree. All three jobs have a specific vocational preparation (SVP) level of "2" meaning Brown would be able to learn the necessary skills for these jobs in a month at most.[2] Brown's previous work was also unskilled with an SVP level of 2. AR 293. The fact that another source suggests greater skill and experience requirements is of little consequence given that VE May considered Brown's age, education and work experience in identifying these jobs, she was not asked about additional skill and experience requirements during the hearing and her testimony is consistent with DOT. I find no error with this aspect of the ALJ's decision. This objection is overruled.

---

[2] SVP is defined in Appendix C of the DOT as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." An SVP of 2 is "[a]nything beyond short demonstration up to and including 1 month."

**B.** *Additional Limitation Related to Absenteeism*

Brown argues the record supports his assertion that he would need to be absent or leave work early at least twice per month to receive medical treatment. Doc. No. 30 at 4. He argues there is no evidence in the record to support a finding that appointments could be made over the lunch hour or during breaks. *Id.* He explains he has at least monthly appointments with his primary care physician and at the pain center and that he sees his mental health counselor two to four times per month. He contends the R&R focused on the need to be absent for entire days for medical treatment but did not discuss the need to leave early or arrive late and that VE May testified that there would be no work available if Brown had to leave work early at least two days per month. *Id.* at 4-5 (citing AR 89-90). Brown argues that his need to miss work or leave early to attend medical appointments would not change based on his geographic location.

Brown misconstrues the burden of proof as to this alleged limitation. The claimant bears the burden to prove his or her RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). If Brown contends his medical appointments would necessarily conflict with a work schedule, it is his burden to demonstrate that. It is not the Commissioner's burden to demonstrate he could attend appointments during a lunch hour or outside his work schedule. *See Brock v. Astrue*, No. 4:07-CV-00632-NKL, 2008 WL 4104551, at *16 (W.D. Mo. Aug. 28, 2008) ("the fact that a claimant must attend regular healthcare appointments does not necessarily indicate that she cannot work; there is nothing in the record to indicate that Brock could not schedule appointments around her work schedule."). As Judge Mahoney noted, numerous courts have rejected the argument that the need to attend medical appointments means an individual cannot work. *See* Doc. No. 29 at 14 (citing cases). Because Brown has not demonstrated that his appointments would require him to miss entire workdays, or that he would be unable to arrange his appointments around a work schedule, and it is his burden to prove his RFC, I find that the ALJ did not err in failing to include a limitation related to absenteeism in the RFC determination or hypothetical question to the VE. This objection is overruled.

### C. Additional Limitation Related to Unscheduled Breaks and Being Off-Task

Brown argues the ALJ should have included a limitation in the RFC reflecting the need for unscheduled breaks or being off task more than 10 percent of the time due to poor sleep, spells of tearfulness and panic attacks and flashbacks. Doc. No. 30 at 5. Brown acknowledges that the R&R recognizes support in the record for his poor sleep and spells of tearfulness. He explains that his panic attacks and flashbacks require him to lie down for five to ten minutes at a time and are not limited to nighttime. He claims that these symptoms would require him to be off task or take unscheduled breaks at work. *Id.* at 6.

The ALJ discussed the evidence, including medical opinion evidence, related to Brown's mental health symptoms. *See* AR 36-45. Specifically, he noted that after his accident, Brown experienced anxiety, depression and sleep problems and was treated using therapy and medication. AR 38. Brown also experienced a number of situational stressors but was less likely to experience panic symptoms when busy caring for his wife. *Id.* In May 2016, Brown's attention and concentration were noted to be intact as part of his consultative examination. *Id.* The consultative examiner noted that "symptoms of PTSD might make it difficult for him to be effective in the workplace" but did not explain what those limitations might look like. *Id.* at 39. While the consultative examiner found only mild depressive symptomology, the ALJ concluded the record supported moderate limitations in concentration, persistence and pace. *Id.*

In September 2017, Dr. Bansal noted Brown often relived the incident, had erratic sleep and nightmares and slept about four hours per night. *Id.* at 43. Dr. Bansal also noted that Brown had difficulty with concentration and focusing. *Id.* While he diagnosed Brown with PTSD and anxiety/depression, he did not identify any restrictions related to Brown's mental health. *Id.* The ALJ concluded with regard to Brown's mental limitations: "Although he alleged severe depression and PTSD, he was routinely alert and oriented, in no distress, and was pleasant and cooperative. Objectively there had been little to no significant continuous deficits in memory, attention, concentration,

thought process, thought content, or cognition. Moreover, more recently, they had been essentially normal." AR 45.

Judge Mahoney thoroughly explained the record evidence regarding Brown's symptoms of poor sleep, tearfulness, panic attacks and flashbacks. *See* Doc. No. 29 at 15-17. While the record could support additional limitations of the need for unscheduled work breaks and being off-task, that is insufficient to reverse the ALJ's decision. I am required to consider evidence that detracts from the ALJ's decision as well as evidence that supports it, but I am not permitted to reverse 'merely because substantial evidence also exists that would support a contrary outcome." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001); *see also Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (noting the court does not re-weigh the evidence and the Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."); *Vester*, 416 F.3d at 889 ("we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence . . . ."); *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (noting if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, [the court] must affirm the ALJ's decision).

Based on my de novo review of the record, I find that the ALJ's RFC determination without these additional limitations is supported by substantial evidence in the record as a whole. None of the medical opinions addressing Brown's mental impairments identify limitations related to Brown's difficulties with sleep, tearfulness, panic attacks and nightmares. *See* AR 93-124 (state agency consultants' opinions); AR 2091-98 (opinion of Dr. Gutnik); AR 2390-92 (opinion of Dr. Baker); AR 2509-12 (opinion of Dr. Larson noting that while Brown's depression and PTSD could lead to issues in the workplace and that his PTSD symptoms would be most problematic, he could understand and carry out instructions, interact appropriately with others, exercise proper judgment and remain flexible in the workplace); AR 2602-2625 (opinion of Dr.

Patra noting that while Brown has concentration difficulties coupled with memory issues, having employment in some capacity may lessen some of his emotional struggles).

As observed by some medical providers, Brown's mental health symptoms appeared to be exacerbated by issues with his workers' compensation case. *See* AR 2931 (noting in November 2017 that mediation related to his case had not gone well and he was experiencing increased anxiety, depression and flashbacks due to talking about the trauma "over and over"); AR 2932 (noting in November 2017 Brown identified several environmental stressors causing an increase with depression, primarily related to his workers' compensation case); AR 2933 (noting in November 2017 Brown was tearful and nightmares were worsening); AR 2934-35 (noting in December 2017 that Brown's case had settled and "symptoms reduce today due to this."). The record suggests he experienced similar increased depression symptoms while pursuing his disability case. AR 14. While Brown continued to express difficulties with sleep to his therapist in late 2017, this was not addressed by his medication provider until January 2018. *See* AR 2942-43 (noting she last saw him in October 2017 and that he reported his depression and crying spells had improved and while he still struggled with nightmares and sleep it was getting better). Brown requested to stay on the same dosage of his medication at that time. *Id.*

As the ALJ and Judge Mahoney explained, Brown's memory, attention, concentration, thought process, thought content and cognition have essentially been normal in his most recent examinations. AR 45. He also appeared alert and oriented, in no distress and was pleasant and cooperative at his appointments. *Id.* Nonetheless, the ALJ did account for mental health symptoms in his RFC by including a limitation of simple, routine tasks. AR 36. I find the ALJ's RFC determination is supported by substantial evidence in the record as a whole and that the record does not mandate the additional limitations Brown asserts.

## V. CONCLUSION

For the reasons set forth herein:

1.      Plaintiff's objections (Doc. No. 30) to the Report and Recommendation (Doc. No. 29) are **overruled**.

2.      I **accept** the Report and Recommendation **without modification**.  *See* 28 U.S.C. § 636(b)(1).

3.      Pursuant to Judge Mahoney's recommendation:

a.      The Commissioner's disability determination is **affirmed**; and

b.      Judgment shall enter against plaintiff and in favor of the Commissioner.


**IT IS SO ORDERED.**

**DATED** this 26th day of March, 2020.

_____
Leonard T. Strand, Chief Judge